UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES M. POTTS,

                                        Plaintiff,              Case # 18-CV-126-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

## INTRODUCTION

Plaintiff Charles M. Potts brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 12. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On September 30, 2013, Potts protectively applied for SSI with the Social Security Administration ("SSA"). Tr.[1] 193-98. He alleged disability since February 12, 2011 due to herniated discs and back, neck, and right knee injuries. Tr. 219-20. On June 22, 2016, Potts and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Sharon Seeley. Tr. 26-92. On September 12, 2016, the ALJ issued a decision finding that Potts was not disabled within the meaning of the Act. Tr. 10-20. On November 28, 2017, the Appeals

---

[1] "Tr." refers to the administrative record in this matter.

1

Council denied Potts's request for review. Tr. 1-6. Thereafter, Potts commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Potts's claim for benefits under the process described above. At step one, the ALJ found that Potts had not engaged in substantial gainful activity since the application date. Tr. 12. At step two, the ALJ found that Potts has the following severe impairments: lumbar disc disease, cervical spine disease, and status-post right knee arthroscopic surgery and partial medial meniscectomy. Tr. 12. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal a Listings impairment. Tr. 12-13.

Next, the ALJ determined that Potts retains the RFC to perform light work[2] with additional limitations. Tr. 13-18. Specifically, the ALJ found that Potts can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can stand and walk six hours in an eight-hour workday with no sitting limitations, but must sit for five minutes after standing or walking for 45 minutes and must stand for five minutes after sitting for 45 minutes; can frequently reach; can occasionally balance or stoop; cannot kneel or crouch; can occasionally climb ramps or stairs but cannot climb ladders, ropes, or scaffolds; cannot operate foot controls with his lower extremities; and cannot be exposed to hazards like unprotected heights or moving machinery. Tr. 13.

At step four, the ALJ relied on the VE's testimony and found that Potts cannot perform his past relevant work as a construction worker. Tr. 18. At step five, the ALJ relied on the VE's

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

4

testimony and found that Potts can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 18-19. Specifically, the VE testified that Potts could work as a telemarketer/telephone solicitor and telephone switchboard operator. Tr. 19. Accordingly, the ALJ concluded that Potts was not disabled under the Act. Tr. 19-20.

**II.     Analysis**

Potts argues that remand is required because the ALJ improperly weighed the opinion of consultative examiner Abrar Siddiqui, M.D. ECF No. 9-1 at 10-13. The Commissioner maintains that the ALJ properly weighed this opinion (ECF No. 12-1 at 12-19), and the Court agrees.

The SSA's regulations require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. § 416.927(c). Unless a treating source's opinion is given controlling weight,[3] the ALJ must consider the following factors when she weighs a medical opinion: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)-(6).

Dr. Siddiqui examined Potts on November 27, 2013 and opined that he has "moderate to marked" limitations in his ability to sit, stand, climb, push, pull, or carry heavy objects. Tr. 394-98. The ALJ afforded this opinion "little weight"[4] because it was based on a one-time examination

---

[3] There is no treating source opinion in this case.
[4] Although the ALJ afforded Dr. Siddiqui's opinion only little weight, her RFC determination is fairly consistent with that opinion. Dr. Siddiqui opined, for example, that Potts has moderate to marked limitations in his ability to climb, and the ALJ limited him to occasionally climbing ramps or stairs but never climbing ladders, ropes, or scaffolds. Tr.

5

and other treating source examinations "reported a normal gait rather than the limping" that Dr. Siddiqui reported. Tr. 16. The ALJ also found Dr. Siddiqui's opinion of "moderate to marked" limitations vague and inconsistent with other record evidence and the gap in Potts's treatment. *Id.*

In accordance with the regulations, the ALJ considered that Dr. Siddiqui examined Potts and appropriately discounted his opinion based on their limited treatment relationship. 20 C.F.R. § 416.927(c)(1)-(2) (in evaluating opinion evidence, an ALJ considers whether the source examined the claimant and the length, nature, and extent of the treatment relationship).

In accordance with the regulations, the ALJ also discounted Dr. Siddiqui's opinion based on its consistency with the record as a whole. *Id.* at § 416.927(c)(4). Specifically, the ALJ indicated that other sources often reported that Potts had a normal gait, while Dr. Siddiqui reported that Potts was limping. Tr. 16 (referring to Tr. 396). Potts argues that this "mischaracterizes" the evidence because his treatment notes reflect a limping gait at various appointments. ECF No. 9-1 at 11 (citing Tr. 317, 333, 529). The records that Potts cites contain treatment notes from December 24, 2012 and March 6, 2013—which are close in time to his February 2013 knee surgery—that reveal an antalgic gait and a lumbar spine x-ray report that does not mention Potts's gait. Tr. 317, 333, 529. Despite these instances of an antalgic gait, however, the majority of the treatment notes reveal that Potts had a normal gait, especially after he recovered from surgery. *See, e.g.*, Tr. 282, 286, 291, 294, 298, 303, 307, 312, 325, 500, 503. Moreover, the ALJ was entitled to resolve such conflicts in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews

---

13, 397. Dr. Siddiqui also opined that Potts has moderate to marked limitations in his ability to push, pull, or carry heavy objects, and the ALJ limited him to performing those activities with only 20 pounds occasionally and 10 pounds frequently. *Id.*

6

a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

The ALJ also discounted Dr. Siddiqui's opinion because she found it "quite vague," which she was authorized to do under the regulations. *See* 20 C.F.R. § 416.927(c)(3) (an ALJ will give more weight to a medical opinion that is well explained). Potts asserts that the ALJ should have contacted Dr. Siddiqui and asked him to clarify his opinion. ECF No. 9-1 at 11-12. But the record contained no "obvious gaps" that would have prompted the ALJ to contact Dr. Siddiqui. *See* 20 C.F.R. § 416.912(b); *Rosa*, 168 F.3d at 79 n.5 (where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence). Dr. Siddiqui's assessment was not the only opinion as to Potts's ability to work—the record also contained opinions from Potts's physical therapist and treating nurse practitioner, and Potts does not assert that the ALJ erred when she weighed those opinions.

Finally, the ALJ noted that "[t]o the extent [Dr. Siddiqui's opinion] is intended to mean greater limitations than those reflected in the [RFC]," she afforded the opinion little weight because she found it inconsistent with other record evidence that "does not support such severe limitations" and with Potts's lack of treatment for nearly two years after Dr. Siddiqui's examination. Tr. 16. Potts asserts that this "reasoning is flawed because it is circular." ECF No. 9-1 at 12. Potts is correct that the ALJ cannot credit a medical opinion to the extent it is consistent with her already-determined RFC. *See, e.g.*, *Faherty v. Astrue*, No. 11-CV-02476 (DLI), 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013) ("The ALJ explained the reason for giving [a] medical source statement significant weight was that it was consistent with her RFC. Such reasoning is circular and flawed. The ALJ should use medical opinions to determine Plaintiff's RFC, and, therefore, cannot give medical opinions weight based on their consistency with the RFC."). But the ALJ did not discount

7

Dr. Siddiqui's opinion because it was inconsistent with her RFC; rather, she properly rejected limitations exceeding the RFC determination because she found them inconsistent with other record evidence and the gap in Potts's treatment. *See* 20 C.F.R. § 416.957(c)(4) (the ALJ is entitled to discount an opinion she finds inconsistent with the record as a whole).

For all the reasons stated, the Court finds that the ALJ did not err when she weighed Dr. Siddiqui's opinion and therefore affirms the Commissioner's decision.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 9, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court